IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Sharon B., )<br>)<br>    *Plaintiff*, )<br>)<br>    v. )<br>)<br>Kilolo Kijakazi, )<br>Acting Commissioner of Social Security, )<br>)<br>    *Defendant*. ) | Case No. 3:22-cv-50133<br><br>Magistrate Judge Lisa A. Jensen |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sharon B. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her applications for a period of disability, disability insurance benefits, and supplemental security income.[1] For the reasons set forth below, the Commissioner's decision is reversed, and the case is remanded.

**I. Background**

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on April 10, 2020, alleging a disability beginning October 11, 2019, because of fibromyalgia, posterior tibial tendinitis in the left foot, labral tear in the left hip, major depressive disorder, anxiety, plantar fasciitis, TMJ, and tension headaches.[2] R. 95–96, 109–10.

A remote hearing on Plaintiff's applications was held before an administrative law judge (ALJ) on May 17, 2021. R. 162. The ALJ heard testimony from Plaintiff and an impartial

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 5.

[2] The parties focus their arguments solely on Plaintiff's mental impairments, so the Court will likewise not address Plaintiff's physical impairments.

1

vocational expert (VE). R. 162. The ALJ issued a written decision on July 7, 2021, finding that Plaintiff was not disabled under the applicable sections of the Social Security Act and thus not entitled to benefits. R. 185.

At step one of the inquiry, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. R. 165. At step two, the ALJ found that Plaintiff had the severe impairments of fibromyalgia, left foot tendinitis, bilateral plantar fasciitis, residuals from a left hip labral tear, bipolar/depression, and anxiety. R. 165. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal a listed impairment. R. 166–72. When evaluating Plaintiff's mental impairments, the ALJ concluded that Plaintiff had a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in maintaining concentration, persistence, or pace; and a moderate limitation in adapting or managing herself. R. 168–71. The ALJ then found that Plaintiff had the residual functional capacity (RFC)

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours and sit 6 for hours, in an 8-hour workday; frequent foot controls with the bilateral lower extremities; no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; frequent balancing, stooping, kneeling, crouching, or crawling; no exposure to unprotected heights or moving mechanical machinery; can carry out simple tasks with simple work-related decisions and judgments, performing these tasks with adequate pace, persistence, and concentration in two hour segments allowing for normal breaks; can tolerate frequent interaction with supervisors and occasional interaction with coworkers and the general public; can tolerate the stresses associated with simple work; and can tolerate changes in a routine work setting consistent with simple work, provided any changes must be explained in advance and introduced slowly throughout a workday or workweek.

R. 172. Applying this RFC at step four, the ALJ found that Plaintiff could not return to her past relevant work as a sales manager, retail clerk, order clerk, or shipping clerk. R. 182–83. At step

2

five, the ALJ concluded that a significant number of jobs existed in the national economy that Plaintiff could perform, such as marker, housekeeping cleaner, and inspector hand packager. R. 183–85.

After the Appeals Council denied Plaintiff's request for review on March 3, 2022, R. 1, Plaintiff filed the instant action. Dkt. 1.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

## III. Discussion

Plaintiff argues that the ALJ erred by (1) failing to build a logical bridge from the evidence of Plaintiff's concentration and social interaction problems to her RFC restrictions, and (2) failing to adequately analyze Plaintiff's subjective statements.

3

**A. The Medical Opinions**

At the initial level, Plaintiff's file was reviewed by state agency psychological consultant Susan Daugherty, Ph.D., in May 2020. R. 106, 120. Dr. Daugherty opined that Plaintiff had a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing herself. R. 100, 114.

Dr. Daugherty also conducted a Mental RFC Assessment, which consisted of a checklist of limitations and a supplemental narrative explanation. R. 105–06, 119–20; *see also DeCamp v. Berryhill*, 916 F.3d 671, 673 (7th Cir. 2019) (describing this form). As relevant here, Dr. Daugherty indicated on the checklist that Plaintiff was moderately limited in her "ability to maintain attention and concentration for extended periods" and her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." R. 105, 119. In the narrative section, Dr. Daugherty stated that "[Plaintiff] is able to perform work where interpersonal contact is routine but superficial, e.g. grocery checker; complexity of tasks is learned by experience, several variables, judgment within limits; supervision required is little for routine but detailed for non-routine. (semiskilled)." R. 106, 120.

At the reconsideration level, Plaintiff's file was reviewed by state agency psychological consultant Joseph Mehr, Ph.D., in October 2020. R. 138, 154. On the above issues, Dr. Mehr's opinion tracked Dr. Daugherty's opinion exactly. R. 131, 136–38, 147, 152–54.

Apart from the state agency reviewers' opinions, there are no other opinions from the disability period regarding Plaintiff's mental impairments, although the ALJ also considered the

4

August 2019 opinion of consultative examiner Kenneth Heinrichs, Psy.D., who examined Plaintiff in the course of Plaintiff's previous claim for benefits.[3] R. 181–82, 1425–29.

**B. The ALJ's RFC Assessment**

A claimant's RFC is the maximum work she can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history, medical findings and opinions, reports of daily activities, and the effects of the claimant's symptoms and treatment. 20 C.F.R. § 404.1545(a)(3); SSR 96-8p, 1996 WL 374184, at *5. "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005)). "Essentially, an ALJ's RFC analysis 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)).

Here, the ALJ analyzed the state agency reviewers' opinions as follows:

> The more complete record supports a greater degree of limitation as to interacting with others and limiting the claimant to routine task. Also, the use of the term "superficial" and other phrases such as "complexity of tasks is learned by experience", are vague and not explained. As to the remaining portions of their opinions, they are supported by the evidence the doctors reviewed, and they are consistent with the other evidence of record. . . . With respect to specific mental functional limitations, I utilized more vocationally

---

[3] Plaintiff filed a previous claim for benefits on August 21, 2017, alleging a disability beginning July 1, 2017. R. 75. Plaintiff's previous claim was denied by a different ALJ on October 10, 2019, R. 88, and was challenged in a different action that resulted in an agreed remand in April 2021. *See Sharon B. v. Saul*, No. 20 CV 50145, Dkt. 26 (N.D. Ill. Apr. 5, 2021). Although Plaintiff's current claim has proceeded on a different track, the earlier medical evidence, including Dr. Heinrichs' opinion, appears in the administrative record in this case. R. 831–1431; *see* R. 75–94 (prior ALJ's decision).

5

> relevant terminology when articulating the claimant's specific mental functional limitations. While I did not adopt the state agency psychological consultants' opinions verbatim, I found the general theme of these specific limitations persuasive when formulating the above residual functional capacity assessment.

R. 180. Based on this analysis, the ALJ found at step three that Plaintiff's limitation in interacting with others was moderate rather than mild, as Dr. Daugherty and Dr. Mehr had opined, but the ALJ adopted their opined limitations in the remaining areas of mental functioning, including a moderate limitation in concentrating, persisting, or maintaining pace. R. 168–71, 180.

The ALJ ultimately adopted RFC restrictions that Plaintiff "can carry out simple tasks with simple work-related decisions and judgments, performing these tasks with adequate pace, persistence, and concentration in two hour segments allowing for normal breaks[ and] can tolerate frequent interaction with supervisors and occasional interaction with coworkers and the general public." R. 172. According to the Social Security Administration, "'[f]requent' means occurring from one-third to two-thirds of the time" and "'[o]ccasional[]' means occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5–6 (S.S.A. 1983). The ALJ incorporated these restrictions into all of his hypothetical questions to the VE. R. 59–63.

Plaintiff argues that the ALJ violated SSR 96-8p by failing to adequately explain why these restrictions accommodate Plaintiff's limitations in light of the ALJ's decision to (1) adopt the state agency reviewers' opinion that she had a moderate limitation in maintaining concentration, persistence, or pace and (2) reject the state agency reviewers' opinion that she had a mild limitation in interacting with others in favor of a more stringent moderate limitation. Plaintiff cites to *Briscoe* for the proposition that a failure to comply with SSR 96-8p "is sufficient to warrant reversal of the ALJ's decision." Pl.'s Br. at 4, Dkt. 12 (quoting *Briscoe*, 425 F.3d at 352). Plaintiff further argues that remand is required in this case because the ALJ did not make up for his failure to comply with SSR 96-8p by building an accurate and logical bridge from the evidence to his conclusions. *Id.*

6

(citing *Jarnutowski*, 48 F.4th at 774). The Court agrees that remand is necessary because the ALJ did not comply with SSR 96-8p or "say enough to enable review of whether [he] considered the totality of [Plaintiff's] limitations." *Jarnutowski*, 48 F.4th at 774 (quoting *Lothridge*, 984 F.3d at 1233).

### 1. Two-Hour Segments Allowing for Normal Breaks

Plaintiff first argues that "[t]he ALJ failed to accommodate his own finding that Ms. Buchholz had moderate concentration, persistence, or pace deficiencies." Pl.'s Br. at 4, Dkt. 12. Plaintiff cites specifically to the state agency reviewers' opinion that Plaintiff had moderate limitations in her ability to maintain attention and concentration for extended periods and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 5 (citing R. 104–06, 136–38). As Plaintiff points out, the ALJ found this portion of the reviewers' opinions "supported by the evidence the doctors reviewed and . . . consistent with the other evidence of record" and thus persuasive. R. 180. As such, Plaintiff argues that the ALJ erred by "impos[ing] a generic limitation to simple tasks with adequate pace, persistence, and concentration in two-hour segments allowing for normal breaks" rather than accommodating these persuasive limitations or explaining why they were omitted from his RFC assessment. Pl.'s Br. at 4, Dkt. 12.

The Seventh Circuit has recognized that state agency reviewers' checklist "observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored." *Varga*, 794 F.3d at 816. The ALJ here went further, and rather than ignoring this medical evidence, he found it persuasive. R. 169–70, 180. Because the ALJ conceded that the reviewers' opined limitations were supported by the medical record, he was required to account for them into his RFC assessment. *Varga*, 794 F.3d at 814; *DeCamp*, 916 F.3d at 676 ("[T]he ALJ . . . must adequately account for limitations

7

identified . . . in check-box sections of standardized forms such as the PRT and MRFC forms."). Although the ALJ was not required to account for these limitations by adopting any particular RFC restriction, he was required to provide a narrative explanation of how the restrictions he did adopt accounted for these limitations, providing an accurate and logical bridge from the evidence to his conclusions. SSR 96-8p, 1996 WL 374184, at *7; *Jarnutowski*, 48 F.4th at 774. The ALJ did not do so here.

The Court agrees with Plaintiff that "[n]o logical bridge is present from evidence of some difficulty with concentration to an accommodation for the same number of breaks as other workers." Pl.'s Br. at 5, Dkt. 12. Indeed, without further explanation from the ALJ, it is unclear how a "restriction" to normal breaks could accommodate Plaintiff's need for an "unreasonable number and length of rest periods" in order to maintain a consistent pace, as the state agency psychological consultants opined. Although the Commissioner argues that a moderate limitation only means that Plaintiff's functioning in this area is *fair*, "a moderate limitation is not the same as 'no' limitation." *Donald R. v. Comm'r of Soc. Sec.*, No. 19-CV-721, 2020 WL 1503579, at *11 (S.D. Ill. Mar. 30, 2020); *see also Warren v. Colvin*, No. 12 C 3298, 2013 WL 1196603, at *5 (N.D. Ill. Mar. 22, 2013) (suggesting that "an ability to maintain focus and attention for at least two-hour intervals at a time [wa]s actually no limitation at all" when "normal breaks" occurred at two-hour intervals). The Commissioner may ultimately be correct that "normal breaks" can accommodate Plaintiff's moderate limitations, but in the absence of any explanation from the ALJ, the Court cannot assure itself that "the ALJ considered the totality of Plaintiff's limitations." *Lothridge*, 984 F.3d at 1233.

Equally unclear is how the ALJ's restriction to two-hour segments could accommodate Plaintiff's need for an unreasonable number and length of rest periods. No medical opinion

8

suggested such a restriction, which the ALJ seems to have formulated on his own. Other courts in the Seventh Circuit have noted that "[t]his particular situation, of an ALJ imposing a two-hour restriction without a logical bridge, seems to be a recurring issue." *Pound v. Comm'r of Soc. Sec.*, No. 21-CV-451, 2022 WL 1771766, at *3 (N.D. Ind. June 1, 2022); *see Goodman v. Saul*, No. 19-cv-00333, 2020 WL 3619938, at *9 (N.D. Ind. June 10, 2020), *report and recommendation adopted*, 2020 WL 3618988 (N.D. Ind. July 2, 2020) (collecting cases). Because the ALJ provided no explanation for this restriction and apparently had no medical basis to support it, the ALJ must provide further explanation on remand. *See Pound*, 2022 WL 1771766, at *3–4 (remanding for further explanation when ALJ adopted state agency consultants' moderate limitation in maintaining regular attendance yet imposed two-hour restriction with no medical support or logical bridge).

The Commissioner's arguments in defense of the ALJ's decision are unavailing. First, the Commissioner notes that the ALJ said that he "found only the general theme of these specific limitations persuasive." Def.'s Br. at 10, Dkt. 14 (quoting R. 180). But this statement by the ALJ is not "a narrative discussion describing *how* the evidence supports [his] conclusion," SSR 96-8p, 1996 WL 374184, at *7 (emphasis added), but rather a bare assertion *that* the evidence supports his conclusion. Without further explanation, the Court cannot trace a logical path from the reviewers' specific checkbox limitations to their unspecified "general theme" to the RFC restrictions that the ALJ ultimately adopted. *See DeCamp*, 916 F.3d at 676.

Next, the Commissioner argues that "the ALJ's agreement that plaintiff was moderately limited in the broad category of concentration, persistence, or pace did not signal agreement with moderate restrictions in all subcategories as indicated by the state agency consultants." Def.'s Br. at 10, Dkt. 14. However, the ALJ *did* signal agreement with the state agency consultants' opinions

9

in these subcategories by finding "the general theme of these specific limitations persuasive." R. 180. Having done so, the ALJ was then required to articulate how his RFC assessment accounted for Plaintiff's limitations in these subcategories, and his failure to do so was error. *Varga*, 794 F.3d at 814.

Finally, the Commissioner argues that the Court should not reverse because "[P]laintiff fails to carry her burden to prove that the facts of her case compelled a finding of greater functional loss beyond what the ALJ assessed." Def.'s Br. at 10–11, Dkt. 14. With respect to an ALJ's RFC assessment, a claimant bears two burdens. At the administrative level, Plaintiff bore the burden of producing evidence of her impairments. *Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011); *see* 20 C.F.R. § 404.1512(a) (describing claimant's responsibility for evidence). Before this Court, Plaintiff bears the burden of citing the medical evidence that supports her argument for greater RFC restrictions; otherwise, the Court may find that Plaintiff's alleged errors in the ALJ's RFC assessment are harmless. *Gedatus*, 994 F.3d at 905 (finding any alleged error harmless when the plaintiff had "not pointed to any medical opinion or evidence to show any tremors caused any specific limitations"); *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (finding any alleged error harmless in part because the plaintiff cited no evidence that his deficits in memory and concentration kept him from performing simple, routine, and repetitive tasks as the ALJ found). Here, Plaintiff has met both of her burdens. At the administrative level, she produced evidence that convinced the state agency reviewers that she had a moderate limitation in her ability to perform at a consistent pace without an unreasonable number and length of rest periods. On appeal, Plaintiff has cited these opinions for the proposition that she requires more rest periods than she would be afforded when working in two-hour segments allowing for normal breaks, as the ALJ found. However, Plaintiff does not have the additional burden of proving to the Court that the ALJ *must*

adopt a greater restriction on remand. Even under the highly deferential substantial evidence standard, "[a] decision that lacks adequate discussion of the issues will be remanded." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). In remanding for the ALJ to provide further explanation of his RFC assessment, the Court is not concluding that the facts of Plaintiff's case compel a finding of greater functional loss, merely that the ALJ has not enabled the Court to assess the validity of his reasoning.

### 2. Frequent Interaction with Supervisors

Plaintiff also argues that "[n]owhere did the ALJ explain how a limitation to frequent interactions with supervisors and occasional interactions with co-workers and the public captured Ms. Buchholz's interpersonal limitations." Pl.'s Br. at 11, Dkt. 12. As mentioned above, the state agency psychological consultants opined in the narrative portion of their mental RFC assessments that Plaintiff had a mild limitation in interacting with others and could "perform work where interpersonal contact is routine but superficial . . . [and] supervision required is little for routine." R. 106, 138. Plaintiff argues that the record supports a limitation to superficial interactions and that the ALJ rejected the state agency consultants' opinions without a supported basis and provided only a conclusory statement to support the limitation he ultimately adopted. Pl.'s Br. at 11, Dkt. 12.

According to Plaintiff, the state agency psychological consultants' restriction to superficial interactions is a greater limitation than the ALJ's restriction to frequent interactions with supervisors and occasional interactions with co-workers and the public. *Id.* In contrast, the Commissioner claims that "[b]y finding [P]laintiff limited to occasional interaction[s] with coworkers and the general public, the ALJ assessed greater social restrictions than those identified by the state agency consultants." Def.'s Br. at 12, Dkt. 14. Notably, the Commissioner does not

11

claim that frequent interaction with supervisors is a greater social restriction than those identified by the state agency psychological consultants. *See id.* Even assuming that the Commissioner has not conceded the point, Plaintiff has the better of this argument—absent a contrary explanation from the ALJ, the state agency psychological consultants' restriction to superficial interactions appears to be a greater limitation than the ALJ's restriction to frequent interactions with supervisors. As Plaintiff points out, the ALJ could adopt this restriction only if he had a proper medical basis and provided an adequate explanation of how he reached his conclusions. Pl.'s Br. at 11, Dkt. 12; *see also* SSR 96-8p, 1996 WL 374184, at *7 ("If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted."). The Court concludes that the ALJ's explanation was inadequate.

When analyzing the state agency psychological consultants' opinions, the ALJ found them partially unpersuasive because "[t]he more complete record supports a *greater* degree of limitation as to interacting with others." R. 180 (emphasis added). Accordingly, the ALJ found that Plaintiff had a moderate limitation in interacting with others, rather than a mild limitation as the state agency psychological consultants had opined. R. 168–69. Nevertheless, rather than limiting Plaintiff to superficial interactions and "little" supervision for routine tasks, as the state agency psychological consultants opined in their narrative explanations, R. 106, 138, the ALJ found that Plaintiff could interact with supervisors up to two-thirds of the workday, R. 172. In other words, the ALJ rejected the only medical opinions from the disability period because Plaintiff required a greater degree of limitation but simultaneously imposed a lesser degree of limitation. Because the Court "cannot

12

uphold the ALJ's decision when it is premised on flawed logic," the Court must remand for further explanation.[4] *Indoranto v. Barnhart*, 374 F.3d 470, 475 (7th Cir. 2004).

Here as well, the Commissioner's arguments in defense of the ALJ's decision are unavailing. The Commissioner cites the ALJ's conclusion that Dr. Heinrichs' opinion was partially persuasive as a basis for his decision to partially reject the state agency psychological consultants' opinions. Def.'s Br. at 11–12, Dkt. 14. However, the ALJ himself did not state that he was rejecting the state agency psychological consultants' opinions in favor of Dr. Heinrichs' opinion; on the contrary, he found that Dr. Heinrichs' opinion was consistent with the evidence of record, including the later evidence. R. 180–81. The Commissioner cannot now rely on Dr. Heinrichs' opinion in an "attempt to supply a post-hoc rationale" for the ALJ's decision. *Lothridge*, 984 F.3d at 1234–35; *see also Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) ("Our review is limited also to the ALJ's rationales; we do not uphold an ALJ's decision by giving it different ground to stand upon."). Moreover, if the ALJ indeed found the opinions inconsistent, he nevertheless erred by failing to explain how he considered and resolved the inconsistency. SSR 96-8p, 1996 WL 374184, at *7.

The Commissioner also argues that "the ALJ did not err by choosing not to use the term superficial" because the ALJ stated that this term was "vague." Def.'s Br. at 12, Dkt. 14 (citing R. 180). According to the Commissioner, the ALJ was tasked with resolving ambiguities in the evidence and properly chose to use the terms occasional and frequent, which are defined by the agency. *Id.* However, the ALJ was required not just to resolve ambiguities but also to explain how those ambiguities were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7. Here, the

---

[4] The Court is not opining whether some logical explanation could support the ALJ's overall conclusions, merely finding that the ALJ's current, self-contradictory explanation is illogical.

ALJ's decision to resolve the purportedly ambiguous term "superficial" in favor of an agency-defined term meaning up to two-thirds of the day requires more explanation than a conclusory statement that the term "superficial" is vague.

The Commissioner next argues that the jobs the VE identified at the hearing were consistent with superficial interaction because the *Dictionary of Occupational Titles* indicates that these jobs "involved taking instructions and helping," which the Commissioner asserts "is identical to the type of jobs the state agency consultants found were consistent with superficial interaction." Def.'s Br. at 12–13, Dkt. 14. As such, the Commissioner claims that "even if the [C]ourt finds error, it was harmless." *Id.* at 13. The Commissioner's reliance on the harmless error doctrine is misplaced. The Seventh Circuit has explained that "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). Here the Court is not convinced with "great confidence" that the ALJ would reach the same conclusions on remand. Critically, the ALJ never solicited testimony from the VE concerning jobs requiring only superficial interactions with supervisors. *See* R. 59–63. Rather, the ALJ asked only about jobs requiring frequent interaction with supervisors. Although the Commissioner provides *post-hoc* interpretations of the *DOT* to make up for this lack of vocational evidence, the VE confirmed at the hearing that the *DOT* does not address the level of interaction with others. R. 61. Rather, the VE relied on her professional experience in formulating her list of jobs. R. 61, 184. The Court has no way to know how the VE's professional experience regarding superficial interactions would have affected her testimony, and thus the Court cannot predict with great confidence what the

14

result of remand will be. Accordingly, the ALJ's error in analyzing Plaintiff's social interaction limitations was not harmless.[5]

In light of the Court's remand for a new RFC assessment, the Court need not address Plaintiff's challenge to the ALJ's subjective symptoms evaluation. However, Plaintiff's counsel should raise all issues argued on appeal with the ALJ on remand, both in a pre-hearing brief and at the administrative hearing. Failure to explicitly raise these issues may result in a waiver if this case is again appealed to this Court.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this opinion.

Date: May 17, 2023        By:  _Lisa A. [signature]_
                               Lisa A. Jensen
                               United States Magistrate Judge

---

[5] The Commissioner again argues that Plaintiff has not shown that the evidence compels a finding of greater loss in functioning beyond what the ALJ assessed. Def.'s Br. at 13, Dkt. 14. This argument fails with respect to Plaintiff's social limitations for the same reasons it fails with respect to Plaintiff's limitations in maintaining concentration, persistence, or pace, as explained above.